"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND B. POLLOK<br><br>  Plaintiff,<br><br>  vs.<br><br>NORTHROP GRUMMAN HEALTH PLAN,<br><br>  Defendant. | Case No. CV09-7006 JST (PJWx)<br><br>**FINAL ORDER** |
| NORTHROP GRUMMAN HEALTH PLAN,<br><br>  Counterclaimant,<br><br>  vs.<br><br>RAYMOND B. POLLOK,<br><br>  Counterdefendant. | |

## I. INTRODUCTION

This is an action pursuant to the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff Raymond B. Pollok was an employee for Northrop Grumman Corporation ("NGC") and, on or about August 12, 2004, stopped working as a result of a back injury. (Compl. ¶ 10.) Plaintiff contends that the Northrop Grumman Health Plan ("Defendant" or "the Plan") that was in effect at the time of his disability did not contain offset provisions for benefits Plaintiff received from other sources, and seeks to recover damages in the amount that Defendant has withheld from Plaintiff pursuant to these offset provisions. Defendant argues that the Plan did contain offset provisions and has filed a counterclaim seeking reimbursement of alleged overpayments pursuant to the Plan that are in Plaintiff's possession.

Plaintiff bases his contention that the Plan lacked offset provisions on his own review in 2004 of the Summary Plan Description ("SPD") that NGC made available online. (*See* Deposition of Raymond Pollok ("Pollok Depo.") at 25-27.) Plaintiff allegedly reviewed the SPD for "anything pertinent" to his long-term disability ("LTD") benefits (*id.* at 27:13-14), but admits that he was not "looking specifically" for offset provisions. (*Id.* at 31:8-22.) Plaintiff printed out and provided for the record certain pages of the SPD that he felt "were most pertinent to [his] situation," and asserts that because these pages do not include offset provisions, the SPD necessarily lacked offset provisions. (Administrative Record "AR" 622-626.) Defendant maintains that the SPD contained offset provisions. Thus, the issue in dispute is whether the SPD that NGC made available online to its employees at the time of Plaintiff's injury included offset provisions.

On November 23, 2010, the Court conducted a one-day bench trial, after which the Court requested further briefing from the parties as to the date the Plan was issued and the contents of SPD. (Doc. 46.) To that end, the Court re-opened discovery for forty-five days. On January 21, 2011, both parties submitted supplemental briefing and requested further oral argument. (Docs. 48, 49.) The Court held additional oral argument on April 4, 2011.

The following constitutes the Court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52.  To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

## II. FINDINGS OF FACT

1. From 1981 through 2004, Plaintiff was employed as a pilot by NGC. (Compl. ¶ 10.)

2. Plaintiff currently receives LTD benefits under a group insurance policy issued by Unum Life Insurance Company of America ("Unum").  (AR 357.)

3. Unum issued Group Policy No. 586517 001 ("Policy"), dated July 1, 2003, to NGC as part of the Plan.  (AR 460.)

4. The Policy confers discretionary authority on Unum as follows:

> **DISCRETIONARY ACTS**
>
> In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan.  Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

(AR 497.)

5. NGC's Employee Welfare Benefits Committee is the Plan Administrator and named fiduciary of the Plan.  (AR 492.)

6. The Policy allows Unum to offset the amount of any deductible sources of income from disability benefits paid under the Policy. (AR 480.)

7. The Policy defines deductible sources of income as follows:

**WHAT ARE DEDUCTIBLE SOURCES OF INCOME?**

Unum will subtract from your gross disability payment the following deductible sources of income:

1) The amount that you receive or are entitled to receive under:

- a workers' compensation law.

. . .

3) The amount that you receive or are entitled to receive as disability payments or the amount you receive as retirement payments under:

- the United States Social Security Act.

(AR 480.)

9. Regarding minimum benefit awards, the Policy states:

**WHAT IF SUBTRACTING DEDUCTIBLE SOURCES OF INCOME RESULTS IN A ZERO BENEFIT? (Minimum Benefit)**

The minimum monthly benefit is the greater of:

- $100; or
- 10% of your gross disability payment.

Unum may apply this amount toward an outstanding overpayment.

(AR 481.)

10. If it determines that a plan participant may qualify for deductible sources of income, the Policy permits Unum to estimate the amount of deductible sources of income as follows:

**WHAT IF UNUM DETERMINES YOU MAY QUALIFY FOR DEDUCTIBLE INCOME BENEFITS?**

When we determine that you may qualify for benefits…in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amounts if such benefits:

- have not been awarded; and

- have not been denied; or

- have been denied and the denial is being appealed.

. . .

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or

- that benefits have been denied and all appeals Unum feels are necessary have been completed.

. . .

If you receive a lump sum payment from any deductible sources of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

(AR 482.)

11. The operative SPD that is applicable to the Plan and the Policy is dated July 1, 2003, and was in effect during 2004. (AR 1440.)

12. The SPD was posted on NGC's employee benefits website known as "Benefits Online" on November 3, 2003. (Deposition of Kristin T. McMillan ("McMillan Depo."), 34:2-16 and Exhibit 12.) Plaintiff argued for the first time in his supplemental trial brief that although the SPD was posted on Benefits Online and undeniably contained offset provisions, the SPD was not posted on NGC's internal "secure" intranet website,

where NGC allegedly directed its employees to consult the SPD and where Plaintiff alleges he reviewed the SPD and printed portions thereof. (Pl.'s Supp. Br., Doc. 49, at 6-8.) However, the pages of the SPD that Plaintiff printed and provided for the record display "Benefits Online" at the top left-hand side, and Plaintiff has not offered any evidence that two Benefits Online websites existed. Considering that: (1) Defendant has provided evidence that the SPD, containing offset provisions, was posted to the Benefits Online website on November 3, 2003, (2) there is no evidence in the record that NGC maintained more than one Benefits Online website, and (3) the SPD pages Plaintiff submitted came from Benefits Online and, as Plaintiff admits, did not represent the entire SPD, the Court finds that the great weight of the evidence supports a finding that the entire SPD, including its offset provisions, was available to Plaintiff as of November 3, 2003.

13. The SPD includes the following language:

**How LTD Benefits Integrate With Other Disability Income**

The benefit payments you receive under the basic and optional LTD plans are offset dollar for dollar by other disability income benefits that you receive – or are entitled to receive – for the same disability.

. . .

These types of benefit payments may be subtracted from your LTD benefit payments:

- Workers' compensation[.]
- Benefit payments under a state compulsory benefit act or law[.]

. . .

- Benefit payments that you receive or are eligible to receive under the United States Social Security Act[.]

. . .

- Retirement benefit payments under your Northrop Grumman retirement plan[.]

(AR 1168-1169.)

14. On or about August 12, 2004, Plaintiff stopped working as a result of a physical injury to his back. (Compl. ¶ 10.)

15. Pursuant to the Policy, Unum began paying monthly benefits of $9,761.27 beginning February 12, 2005, after expiration of the 180-day Elimination Period. (AR 357-360.)

16. On February 16, 2005, Plaintiff applied for Social Security Disability Insurance ("SSDI") benefits. (AR 372-373.)

17. In a March 18, 2005 letter to Plaintiff, Unum notified him that his LTD claim had been approved and reminded Plaintiff of the policy language permitting it to deduct the amount of any SSDI benefits he was awarded from his LTD benefit payments. (AR 358-59.)

18. Unum's March 18, 2005 letter to Plaintiff stated:

> Your policy provides that an estimate amount of SSDI benefits may be deducted from your LTD benefit beginning on the first of the month following five full months of disability. Realizing that this may create a financial hardship for you, we are willing to provide you with a full disability benefit until the Social Security Administration approves your claim. However, you must agree to repay us in full for any monies advanced to you while your SSDI claim is being evaluated.

(AR 359.)

19. On June 12, 2005, Plaintiff was awarded SSDI benefits in the amount of $1,891.00 per month from January 2005. In 2005, Plaintiff was also awarded State Disability benefits in the amount of $3,154.60 per month. (AR 750.) Plaintiff did not notify UNUM of these awards. (*See* AR 384, 523.)

20. On February 10, 2009, Unum received confirmation that, in addition to SSDI benefits, Plaintiff had also been receiving monthly Pension Retirement benefits in the amount of $8,169.21 commencing in October 2008, of which Plaintiff had not notified UNUM. (AR 729.)

21. On February 11, 2009, after receipt of Plaintiff's SSDI award notice and confirmation of Plaintiff's receipt of Pension Retirement benefits, Unum calculated Plaintiff's overpayment as $250,128.15. (AR 751-757.)

22. On February 11, 2009, Unum sent a letter to Plaintiff informing him of its recalculation of his overpayment and informing him that his monthly benefits were being reduced to $973.13. Plaintiff was further informed that due to the outstanding overpayment, his monthly benefits would be applied to the recovery of the overpayment. (AR 734-735.)

23. On May 5, 2009, Plaintiff appealed Unum's decision to reduce his monthly benefit amount to recover the overpayment. Plaintiff's appeal stated that Unum was not entitled to offset other sources of income from his LTD benefits based on information he claimed to have seen on his employer's benefits website. Plaintiff also stated that there was no "policy" in effect at the time of his disability in 2004. (AR 980-983.)

24. On May 12, 2005, Unum began a review of its determination that Plaintiff's LTD claim had been overpaid. (AR 977.)

25. After a complete review of its determination that Plaintiff's LTD claim had been overpaid, Unum sent Plaintiff a letter on May 20, 2009 informing him that its prior decision was appropriate. (AR 1007-1009.)

26. In or around August 2010, Unum obtained copies of Plaintiff's Workers' Compensation Compromise and Releases which indicate that Plaintiff received deductible sources of income as the result of a workers' compensation award in the amount of approximately $36,000. (AR 1426-1428).

27. On September 11, 2010, Unum completed a revised calculation of Plaintiff's overpayment taking into consideration Plaintiff's workers' compensation settlement. The

revised calculation reduced the amount of Plaintiff's overpayment to $88,255.33. (AR 1417-1418).

### III. CONCLUSIONS OF LAW

1. This action is governed by the provisions of ERISA.

2. The scope of judicial review of an ERISA benefits decision depends on whether the plan vests discretion in the administrator in determining benefits. *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1324 (9th Cir. 1992). The Court reviews a denial of benefits de novo, unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, Policy terms and the SPD give NGC and Unum discretionary authority and, therefore, Unum's decision to offset Plaintiff's benefit payments should be reviewed for abuse of discretion. (AR 492, 1344); *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629-30 (9th Cir. 2009). However, in this case, NGC is acting as both the funding source and plan administrator. "An insurer with a 'dual role as the administrator and funding source for the [p]lan' has an inherent conflict of interest." *Nord v. Black & Decker Disability Plan*, 296 F.3d 823, 828 (9th Cir. 2002) (quoting *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 797 (9th Cir. 1997)) *overruled on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). The reviewing judge must take the conflict into account when determining whether the administrator abused its discretion and must "temper the abuse of discretion standard with skepticism 'commensurate' with the conflict." *Nolan v. Heald Coll.*, 551 F.3d 1148, 1153 (9th Cir. 2009) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 959 (9th Cir. 2006)).

3. Section 1022(b) of ERISA defines the elements of an SPD. 29 U.S.C. § 1022(b).

4. To constitute an ERISA SPD, a document must contain the following:

9

(1) the name and type of administration of the plan;

(2) the name and address of the person designated as agent for the service of legal process, if such person is not the administrator;

(3) the name and address of the administrator;

(4) names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator);

(5) a description of the relevant provisions of any applicable collective bargaining agreement;

(6) the plan's requirements respecting eligibility for participation and benefits;

(7) a description of the provisions providing for nonforfeitable pension benefits;

(8) circumstances which may result in disqualification, ineligibility, or denial or loss of benefits;

(9) the source of financing of the plan and the identity of any organization through which benefits are provided;

(10) the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis;

(11) the procedures to be followed in presenting claims for benefits under the plan; and,

(12) the remedies available under the plan for the redress of claims which are denied in whole or in part. *Pisciotta v. Teledyne Industries, Inc*., 91 F.3d 1326, 1329 (9th Cir. 1996).

5. The SPD dated July 1, 2003 contains all twelve of the requirements of an SPD set forth in 29 U.S.C. § 1022(b) and is the operative SPD. (AR 1012-1212). The SPD contained offset provisions that are applicable to Plaintiff, and thus Defendant had the right to offset Plaintiff's LTD benefits.

6. Defendant's Counterclaim seeks restitution of the funds wrongfully paid to Plaintiff. (*See* Doc. 9.) Section 502(a)(3) of ERISA allows a fiduciary "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). A fiduciary may recover equitable restitution under section 502(a)(3). *See Sereberoff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 361-362 (2006); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-215 (2002). Defendant's claim for restitution is equitable in nature because it seeks to recover "particular funds" that are unjustly in Plaintiff's "possession and control." *Id.* at 362-63.

7. The Court concludes that Defendant is entitled to judgment in its favor on Plaintiff's Complaint and on its Counterclaim in the form of an equitable lien or constructive trust in the amount of $88,255.33, which has been overpaid to Plaintiff. Defendant is ordered to prepare and submit a judgment consistent with this order.

DATED: April 12, 2011

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE

11