James T. Hudson, Esq. (SBN 43436)
LAW OFFICES OF JAMES T. HUDSON
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010
Telephone:  (213) 386-2747
Facsimile:  (213) 386-3916
E-Mail: james.hudson.law@ca.rr.com

Attorney for Plaintiff and Counterdefendant
Raymond B. Pollok

# UNITED STATES DISTRICT COURT

# CENTRAL DISCTRICT- LOS ANGELES DIVISION

| | |
|---|---|
| Raymond B. Pollok, an individual,<br><br>        Plaintiffs,<br><br>    vs.<br><br>Northrop Grumman Health Plan, an employee benefit plan, and DOES 1 through 10 inclusive,<br><br>        Defendants. | Case No.:   CV09-07006 JST(PJWx)<br><br>Judge: Hon. Josephine Staton Tucker<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW (F.R.P.C. 52(b))**<br><br>Date:     August 22, 2011<br>Time:    10:00 a.m.<br>Ctrm:    10A |
| Northrop Grumman Health Plan,<br><br>        Cross-claimant,<br><br>    vs.<br><br>Raymond B. Pollok,<br><br>        Counterdefendant | |

///
///
///
///
///

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## 1.  <u>INTRODUCTION</u>

This is a motion to amend the Courts' findings and make additional findings, pursuant to F.R.C.P. 52(b).

The decision to grant or deny a motion to amend or enlarge findings is within the discretion of the trial court (*United States vs. Anderson*, 591 F.Supp. 1, 4 (E.D. Wash 1982)).

The primary purpose of a Rule 52(b) motion is correct manifest errors of law or fact (*Clark vs. Nix* 578 F.Supp. 1515, 1516 (S.D. Iowa 1984)).

## 2.  <u>PROCEDURAL HISTORY</u>

Following argument on the initial trial in this matter, the Court issued its order dated November 23, 2010 wherein the Court reopened discovery for 45 days on the central issues in this case: (1) the date on which the ERISA Plan that covers Plaintiff Raymond B. Pollok was actually issued and/or (2) the content of the Summary Plan Description on Defendant Northrop Grumman's website at the time of Pollok's injury.

The Court issued it's Final Order, including Findings of Fact, on April 13, 2011 (Doc. No. 57).  Judgment was entered on June 29, 2011 (Doc. No. 65).

In the Court's Findings Of Fact Nos. 11, 12 and 13, the Court found that a SPD containing offset provisions was posted on NGC's website known as "Benefits Online."  The Court noted Plaintiffs argument that the offset provisions of the SPD were not posted on the NGC secure intranet website, which Plaintiff was referred to for the benefits provisions.  However, the Court rejected that argument and found that Plaintiff had not offered any evidence that two Benefits Online websites existed; hence, the Court concluded that the one Benefits Online website that existed contained offset provisions and that Plaintiff was bound thereby.

### 3. <u>SUMMARY OF PLAINTIFF'S ARGUMENTS</u>

Plaintiff submits that the above Findings are not supported by the evidence, and that the deposition testimony lodged with the Court established that:

    A. There was no UNUM policy in existence at the time of plaintiff's disability;

    B. There were two NGC Benefits Online websites;

    C. Employees such as plaintiff were directed to the secure Benefits Online website;

    D. Plaintiff was the only witness aware of the contents of the secure Benefits Online website;

        (1) The NGC PMK's were not aware of the contents of the secure Benefits Online website, and in the entire record NGC never presented any evidence there were offset provisions on the secure intranet website;

        (2) Mr. Pollok was aware of the entire contents of the secure Benefits Online website, and it did not contain offset provisions;

        (3) The SPD pages printed out by Mr. Pollok in 2004 were from the secure Benefits Online website;

        (4) In 2004 Plaintiff never visited the unsecure Benefits Online website; and

        (5) There were differences in the two Benefits Online websites.

This will be demonstrated below by reference to specific deposition testimony.

## 4. DEPOSITION TESTIMONY

### A. There Was No UNUM Policy In Existence At The Time Of Plaintiff's Disability

The depositions established that at the time of Plaintiff's disability in 2004, the UNUM policy was still being drafted and there was no no-draft policy in existence. Ana Rodriguez testified that she had been employed by NGC as a Senior Consulting Analyst in the Benefits Contracting Department since 2001 (Rod. depo. 18:19-21: 15). There was a reorganization of the NGC benefits plans as of July 1, 2003 (Rod. depo. 37:2-38:16). With respect to the status of the UNUM policy as of 2004, Ms. Rodriguez stated:

Q. Do you remember the -- a time frame that you were looking for back then?

A. I think 2004.

Q. Okay. And did you produce to them a document?

A. I produced the document that would have been in place during that period of time.

Q. And what document was that?

A. I believe it's the Unum Insurance Policy draft.

Q. And do you recall back at that time why this Unum -- why the Unum draft policy was the applicable document?

A. If I recall why?

Q. Yeah.

A. Because of the dates of disability.

Q. So is it correct that in 2004 the only Unum policy in existence was a draft policy?

A. I -- all I can say is that at that time I was probably still working with Unum on the policy, you know,

finalizing that policy, and what we would have is we

would have the policy, but I would request anybody that

would send out a policy at that time to mark it as a draft

because it was not a final document yet.  That's what I do

when I'm still in review and the review process because

just to make sure, you know, that people know this is not

a final document.

(Rod. depo. 48:1-49:2)

With respect to the final (nondraft) policy, Ms. Rodriguez testified it was not finalized until 2006, or later:

BY MR. HUDSON:

Q.     I'd like to go back to the draft policy, and also I

think you indicated that at some point that there was final

policy or a finalized policy.

A.     Yes.

Q.     Do you remember that?

Okay.  And I've marked as <u>Exhibit 7</u> from the

Unum administrative record pages 460 to 505 what was

given to us as a – here, let me show you.

MR. MOAK:  Thank you.

BY MR. HUDSON:

Q.     What was given to my client as non -- non-draft

policy at some point.

A.     Okay.

(Deposition <u>Exhibit 7</u> was marked for identification by

the court reporter.)

BY MR. HUDSON:

Q.     So if you would look at <u>Exhibit 7</u> does that appear
to you to be a copy of the final policy, the non-draft
policy, so to speak?

A.     If it doesn't have "Draft" on top I would say it is a
final policy.

(Rod. depo. 115:8-116:4)

\*        \*        \*

BY MR. HUDSON:

Q.     Well, at some point in time <u>Exhibit 7</u> a hard copy
of <u>Exhibit 7</u> was in the record, so to speak --

A.     Mm-hmm.

Q.     -- is that right?

A.     Yes.

Q.     And what's your best estimate of when that was?

A.     God, it took us a while to finalize the final copy of
the document.  I cannot tell you for sure when, you
know, without looking at my records.

Q.     Would you say 2006 or thereabouts?

A.     I could say it took that long.  It could have been
longer than that, you know, to have a final copy of it.

(Rod. depo. 121:12-122:1).

### B.  <u>There Were Two NGC Benefits Online Websites</u>

In 2004 Kristin McMillan was an employee benefit specialist in the NGC
Benefits Communications Department (McM. Depo. 15:4-7).  She confirmed that
as of August 2004 there were <u>two</u> NGC benefits websites, one open to the public
and the other one a secure website available only to NGC employees:

1   Q.   Did you have any – as of August, 2004, did you

2   have anything to do – personally anything to do with

3   posting information on the Northrop Grumman benefits

4   website?

5   A.   Yes.

6   Q.   Okay.  First of all, can you identify that website?

7   What was the address as of August, 2004?

8   A.   In August, 2004,

9   HTTP://benefits.NorthGrum.com.

10   Q.   Okay.  Let's see if I got that right,

11   HTTP://benefits.Northrop --

12   A.   NorthGrum.

13   Q.   NorthGrum, N-o-r-t-h--

14   A.   G-r-u-m.

15   Q.   --G-r-u-m.com?

16   A.   Yes.

17   Q.   Okay.  Now, was that a secure website or

18   unsecure?

19   A.   Unsecure.

20   Q.   So that would be open to the public?

21   A.   Correct.

22   Q.   Okay.  Was there another secure website relating

23   to benefits, Northrop benefits that was available only to

24   employees using some sort of code or a password?

25   A.   Yes.

26   (McM. depo. 15:23-16:23).

27   Ana Rodriguez confirmed that the secure benefits website was called

28   "Benefits Online":

Q.     And in 2004 was there some sort of website or benefits website that Northrop Grumman Corporation directed employees to?

A.     There was a website, Northrop Grumman Corporation benefits website that is called "Benefits OnLine."  The employees were not told but, you know, we would give that to employees to – for them to go, you know, see their SPDs and that kind of document.

(Rod. depo. 53:20-54:2)

The website was restricted to Northrop employees:

Q.     Well, how -- was it restricted to Northrop Grumman employees?

A.     I believe so.

Q.     And how was that done?

A.     I have no idea how that is done.  I'm not a computer person so --

MR. MOAK:  Were you accessing it through some sort of internal Northrop Grumman website?

THE WITNESS:  Yeah, you access it through the Northrop Grumman I think it's Intranet, and then there's a link that you click on that takes you into the benefits website.

BY MR. HUDSON:

Q.     So it was an Intranet website?

A.     Yeah, it's a – yeah, you access it through Intranet.

MR. MOAK: Wait a minute.  Just so were clear, you said "Intranet"?

THE WITNESS:  Intranet is more of like an
internal, you know, access that we have to the company
website, so I guess you can call it "Intranet."
     I would say for the record that I'm not sure
whether it was Internet or Intranet, but I know that it's an
internal -- internal access.
(Rod. depo. 55:18-56:16).

C. <u>Employees Such As Plaintiff Were Directed To The Secure Benefits Online</u>
<u>Website</u>

With respect to issue (2) outlined in the Court order of November 23, 2010,
Ms. Rodriguez testified that in 2004 NGC employees were directed to a secure
Benefits Online website for employee benefits:

Q.    And in 2004 was there some sort of website or
benefits website that Northrop Grumman Corporation
directed employees to?

A.    There was a website, Northrop Grumman
Corporation benefits website that is called "Benefits
OnLine."  The employees were not told but, you know,
we would give that to employees to – for them to go, you
know, see their SPDs and that kind of document.
(Rod. depo. 53:20-54:2)

    The website was restricted to Northrop employees:

Q.    Well, how -- was it restricted to Northrop
Grumman employees?

A.    I believe so.

Q.    And how was that done?

A.     I have no idea how that is done.  I'm not a computer person so --

MR. MOAK:  Were you accessing it through some sort of internal Northrop Grumman website?

THE WITNESS:  Yeah, you access it through the Northrop Grumman I think it's Intranet, and then there's a link that you click on that takes you into the benefits website.

BY MR. HUDSON:

Q.     So it was an Intranet website?

A.     Yeah, it's a – yeah, you access it through Intranet.

MR. MOAK: Wait a minute.  Just so were clear, you said "Intranet"?

THE WITNESS:  Intranet is more of like an internal, you know, access that we have to the company website, so I guess you can call it "Intranet."

I would say for the record that I'm not sure whether it was Internet or Intranet, but I know that it's an internal -- internal access.

(Rod. depo. 55:18-56:16).

Mr. Pollok's deposition testimony was consistent with the Rodriguez and McMillan testimony.  In 2004 he was told there was no policy and he was directed the NGC secure intranet Benefits Online website:

Q.     Yes.  At the time you made this call in the beginning of 2004, did you have any summary plan description, certificate of insurance policy relating to the disability policy that UNUM replaced?

A.     No.

1    Q.    Had you ever had any documents relating to that
2    prior policy?
3    A.    Prior policy?  I may have at one time.  I don't
4    remember.
5    Q.    If I were to tell you that the prior coverage was
6    through Metropolitan, does that help you at all?
7    A.    That reminds me what I read recently from the
8    judge, but that's all.
9    Q.    All right.  So you spoke to someone.  They told
10   you there was no policy.  Did they tell you anything else?
11   A.    In the initial call I'm not sure if they did or not.
12   Q.    What happened next?
13   A.    Then at some point early on when I was talking to
14   them when they again emphasized there was no policy,
15   and of course I was going around and around with them,
16   well, there must be a policy, how could you not have a
17   policy, the policy should have been in effect, you know,
18   for a long time, I don't understand how you can't have a
19   policy, and they explained that the policy was still being
20   written, it wasn't written yet, and that in the meantime I
21   should use the Benefits Online.
22   (Pollok depo. 18:17-19:23)
23                    *        *        *
24   Q.    So you were told to look online at Benefits Online;
25   correct?
26   A.    That's correct.
27
28

Q.      There was a lot of discussion a couple days ago about a secured website and unsecured website.  Is this a secured website or an unsecured website?

A.      Well, it was -- you know, I heard a lot of things there I've never heard before, and I don't really believe what I heard from our so-called expert, but I know it was what I know as the intranet which is a secure website.  To me the official name has always been intranet is the official name for where I was looking.

Q.      You were looking at benefits on Northrop Grumman's Benefits Online site; right?

A.      Yes.

Q.      This was a site you accessed through Northrop Grumman computers when you were at work?

A.      I can access them at work or I access them at home or from a hotel through special access and special protection.

Q.      If you access them at work do you need a password or any other kind of identifier?

A.      Yes.

(Pollok depo. 21:9-22:8).


D.   Plaintiff Was The Only Witness Aware Of The Contents Of The Secure Benefits Online Website

(1)      The Northrop PMK's Were Not Aware of the Contents of the Secure Benefits Online Website and In The Entire Record NCG Never Presented Any Evidence There Were Offset Provisions On The Secure Intranet Website

Ms. McMillan did not post or publish any information on the secure benefits website; that was done by a third party administrator:

> Q.     In or about August, 2004, did you ever post or
> publish any information on the secure website?
> A.     No.
> Q.     And how do you know that?
> A.     I don't know how.
> Q.     Okay.  Were there other employees of Northrop as
> of August, 2004 who published or posted items on the
> secure benefits website?
> A.     No.
> Q.     Well, how if you know did information get posted
> or published on the secure – on the Northrop secure
> benefits website as of August, 2004?
>    A. A third party administrator.
> Q.     And who was that?
> A.     Towers Perrin.
> (McM. depo. 17:6-20).

Ms. McMillan did not know what the third party administrator published on the secure Benefits Online website in 2004:

> Q.     And once EDS acquired Towers Perrin, did the
> name of the third party administrator change from
> Towers Perrin to EDS, if you know?
> A.     I'm not sure.
> Q.     Okay.  But whether it was Towers Perrin or EDS,
> it's your understanding that in – as of August, 2004 it
> was the third party administrator who actually posted or

published information on the secure Northrop benefits

website?

A.     Correct.

Q.     Okay.  And are you familiar at all with what the

third party administrator posted or published on the

secure Northrop benefits website in – as of August,

2004?

A.     I don't remember.

Q.     Did you ever go on -- did you ever log on to the

secure Northrop benefits website in 2004?

A.     I don't know.

Q.     Okay.  Your involvement with – as of 2004 was

with the other website, the unsecure website whose

address you gave us previous?

A.     Correct.

(McM. depo. 19:11-20:7).

(2)     Mr. Pollok Was Aware of the Entire Contents of the Secure Benefits Online Website, And It Did Not Contain Offset Provisions

When Mr. Pollok found the long-term disability benefits he read all the pages, and there were no pages discussing the impact of other benefits received on his benefits:

Q.     When you went to the summary plan description

for long-term disability benefits, what did you find?

A.     I found what's on these pages.  I was looking for

anything pertinent to my long-term disability, and I read

all the pages in the long-term disability, but I only printed

out the things I thought were most pertinent to my

situation.  There was a large number of pages.

Q.     Do you recall how many?

A.     No.

Q.     Were there any pages that discussed the impact of

your receipt of social security, workers' compensation or

other kinds of benefits on the amount of disability

benefits you would receive?

A.     No, there was not.

(Pollok depo. 27:9-25).

When Mr. Polllok went to the secure website he was looking for everything

applicable to his long term disability benefits:

BY MR. MOAK:

Q.     Before I get to the letter, Mr. Pollok, when you

went on the website and looked at the summary plan

description for the long-term disability benefits were you

looking for offset information or information about the

impact of social security or workers' compensation?

A.     What I was looking for was to learn everything

possible about long-term disability benefits.

Q.     But you weren't looking specifically for

information about social security or workers' comp?

A.     I wasn't really looking specifically for anything

except to become an expert on what concerned me as far

as the policy.

(Pollok depo. 31:8-22)

(3)    The SPD Pages Printed Out By Mr. Pollok In 2004 Were From The Secure Benefits Online Website

The documents attached to Mr. Pollok's declaration were obtained from the SPD on the secure Benefits Online website sometime in 2004:

> Q.    Do you know the web address, URL, that you accessed these documents that are attached as exhibits to your declaration from?
>
> A.    No.
>
> Q.    Can you tell me in general terms how you managed to access these documents?
>
> A.    Again I would use my password protections.  I would go in to a tab that was on my computer, the Benefits Online tab, and press that and get into it.
>
> Q.    And do you know when it was that you did this in this particular instance with regard to these documents that are attached to your declaration?
>
> A.    I went in the same way that I always went in.
>
> Q.    I'm sorry, sir, the question is when?
>
> A.    Oh, when?  Again, as I said, 2004.
>
> (Pollok depo. 24:9-25:1).

Ms. Rodriguez confirmed in her deposition that the SPD pages Mr. Pollok printed out were from the secure NGC website which could only be accessed by employees:

> Q.    Okay.  And turning to – this is Exhibit B to your Declaration which is – which are the documents you said you reviewed in your Declaration which you understood were the copies that Mr. Pollok accessed off of the website.

A.      Mm-hmm.

Q.      Now, do you know if those – if Exhibit B – if the Exhibit B hard copies were made off of the intranet website or the Internet website?

A.      Well, they were printed out from the – from the Benefits OnLine website.

Q.      Which one is that?

A.      This is the intranet one where only the employees can have access to.

(Rod. depo. 124:22-125:10)

(4)     <u>Plaintiff Never Visited The Unsecure Benefits Online Website Until 2010</u>

Mr. Pollok never saw the NGC unsecure benefits website in 2004:

BY MR. HUDSON:

Q.      I think you testified that in 2004 you went to what you've called the intranet Northrop website using your password and codes, and from that website you ended up printing out what's been marked as Exhibit 17; is that right?

A.      That's correct.

Q.      In 2004 did you go to any other Northrop website to your knowledge to try and determine what your disability benefits would be?

A.      No.

(Pollok depo. 54: 16-25)

(5)   <u>There Were Differences In The Two Benefits Online Websites</u>

In December 2010, Plaintiff printed out the corresponding pages of the unsecure Benefits Online website from 2004 and compared them to the corresponding pages he had printed out in 2004 from the secure Benefits Online website; there were differences between the provisions on the two websites:

Q.   Now as I understand it, Exhibit 16 that you produced here is something that you printed out, it looks like, in December of 2010 from the archive.org website; is that correct?

A.   That's correct.

Q.   Did you copy out the pages that you believed appeared to correspond to the pages you copied back in 2004 under Exhibit 17?

A.   That's correct.

Q.   And I think you testified that there were differences that you saw.  Just in general could you for the record state some of the differences you saw between the provisions in the two websites?

A.   Yes.  If you look up at the top of the page, Exhibit 17, "Benefits Online" is printed out.  On Exhibit 16 it says "Benefits Online" up at the top, but it doesn't have it printed on the page in the same manner.

Also at the top of 17 where it's got "Health Online, Pension Online, Savings, Choice," et cetera, it's all in a bold dark block, whereas on Exhibit 16, the page 16, the page we're on in both cases which is Health, "Health" is highlighted in a different manner.

1       Exhibit 16 has black bullets designating some of

2   the areas in the middle of the page, whereas Exhibit 17

3   there are no bullets, and the size and spacing on the pages

4   are different.  And those are some of the main

5   differences.

6      MR. HUDSON:     Okay, that is all I have.

7         FURTHER EXAMINATION

8   BY MR. MOAK:

9      Q. One more question then.  And these differences

10  between Exhibit 16 and 17 suggest what to you, Mr.

11  Pollok?

12     A. That it's a similar but different website.

13  (Pollok depo. 55:1-56:13)

14

15        5.  <u>CONCLUSION</u>

16     For the above reasons, it is submitted that the Court should grant the motion

17  to amend the Findings of Fact and Conclusions of Law, as outlined in the Notice of

18  Motion.

19

20  DATED:  July 22, 2011    LAW OFFICES OF JAMES T. HUDSON

21

22       By:  /s/ James T. Hudson

23       JAMES T. HUDSON

24       Attorney for Plaintiff and Counterdefendant
         Raymond B. Pollok

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO (1) AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW (F.R.P.C. 52(b))

19